IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CCD HOLDINGS, LLC                                                                    PLAINTIFF

V.                                  Case No. 4:19cv102 JM

CENERGY USA, INC.; WAL-MART
STORES, INC.; WAL-MART.COM USA, LLC;
MAGIC DIRT LLC; and
MAGIC DIRT HORTICULTURAL
PRODUCTS LLC.                                                                        DEFENDANTS

ORDER

The Court has several issues to address in this order. First, some disputed terms in the three patents at issue need to be construed, after deciding whether to grant Plaintiff CCD Holdings, Inc.'s motion to exclude evidence presented by Defendants at the *Markman* hearing. (Doc. 92). Second, CCD has filed a motion for sanctions against all Defendants and their lead counsel. (Doc. 106). Third, Defendants have filed a motion for severance and to stay the action against Defendants Walmart Stores, Inc. and Walmart.com USA LLC (collectively "Walmart") pending determination of the patent issues. (Doc. 108-1).

Claim Construction

This dispute involves three patents in a family of patents described by CCD as being "generally [] directed to novel preparation of lignocellulosic fibrous composites via methods of ruminant and anaerobic digestion" in order "to convert waste to resources" and solving "issues associated with durability, absorbency, waste, compostability, biodegradability." (Doc. 78, p. 4). The patents are: U.S. Patent No. 8,893,652 (the "652 Patent"); U.S. Patent No. 8,894,879 (the "879 Patent"), and (3) U.S. Patent No. 10,244,730 (the "730 Patent"). Each of these patents is based on a provisional application filed on March 22, 2011. The '652 and the '879 Patents were

filed on June 3, 2014 and issued on November 25, 2014.  The '730 Patent was filed on May 4, 2018 and issued on April 2, 2019, which was during the course of this action, leading CCD to file a second amended complaint to include claims related to this patent. (Doc. 62).

Following the Markman hearing on January 8, 2020, the parties submitted a revised joint chart of disputed terms, (Doc. No. 102-2).  The parties agree that "animal bedding" as found in these claims is "a material on which or in which an animal can rest."  They also agree that "lignocellulosic fiber" means "natural fiber."  At issue are terms that remain in dispute—solvent, density fiber of the animal bedding, dried, density of the lignocellulosic fibrous composite, and density fiber of the digestate composition. (Revised Joint Chart of Disputed Terms and Proposed Interpretations, Doc. 102-2, "the Revised Chart.").  CCD maintains that these terms do not need construction and should be given their ordinary and customary meaning or, in the case of "density fiber" was a term created and defined by the inventor.

"The words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Absent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning." *See York Prods., Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed.Cir.1996)  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.*  (citations omitted).  It is the claims themselves "that measure the invention."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (citation omitted).

"When claim construction is required, claims are construable … in light of the

specification." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). The specification is "the single best guide to the meaning of a disputed term." *Vitronics,* 90 F3d. at 1582

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. *Vitronics*, 90 F.3d at 1582 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). "Extrinsic evidence, which includes all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises, is less significant than the intrinsic record in the construction process. It should be considered by the court only when intrinsic evidence cannot be used to resolve ambiguities in the claim language." *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 53–54 (2018) (internal quotations and citations omitted).

At the *Markman* hearing, Defendants offered evidence in the form of (a) statements made during the prosecution of Plaintiff's then-pending patent application, No. 16/278252[1] and (b) the expert testimony of John F. Hunt as a person of ordinary skill in the art. CCD's motion to exclude this evidence from consideration (Doc. 92), is granted. Defendants are correct that statements made by the *inventor* during continued prosecution of a related patent application or made during the continued prosecution of a sibling application "can, in some circumstances, be

---

[1] According to the USPTO website, the patent was issued on September 7, 2021 as Patent No. 11,109,564.

relevant to claim construction"[2] and may "inform the meaning of the claim language by demonstrating how the inventor understood the invention."[3]  However, the Court is not persuaded that statements made by the *Examiner* to which CCD did not object are entitled to the same probative value.[4]  As to the testimony of Mr. Hunt, the Court did not find his testimony helpful as a POSITA; it is unnecessary to rely on his expert testimony because the intrinsic evidence is sufficient to properly construe the disputed terms.

Turning to the five terms remaining in dispute—solvent, density fiber of the animal bedding, dried, density of the lignocellulosic fibrous composite, and density fiber of the digestate composition—here they are in context:

> 652 Patent, Claim 1:
>
> Animal bedding comprising: at least one **solvent**, wherein the at least one  solvent comprises water and is present in a concentration of less than approximately 25% weight; a lignocellulosic fiber, wherein the lignocellulosic fiber comprises processed lignin, hemicellulose, and cellulose, and wherein the lignocellulosic fiber has been processed by ruminant digestion and anaerobic digestion; and wherein the **density fiber of the animal bedding** ranges from approximately 0.950 grams per cubic centimeter to approximately 1.40 grams per cubic centimeter.
>
> 879 Patent, Claim 1:
>
> A lignocellulosic fibrous composite, comprising: at least one **solvent**, wherein the at least one solvent comprises water; a lignocellulosic fiber, wherein the lignocellulosic fiber comprises processed lignin, hemicellulose, and cellulose, and wherein the **dried** lignocellulosic fiber has been processed by ruminant digestion and anaerobic digestion; wherein the at least one solvent is present in a concentration of less than approximately 25% by weight; and wherein the **density**

---

[2] *Ventana Med. Sys., Inc. v. Biogenex Lab'ys, Inc.*, 473 F.3d 1173, 1184 (Fed. Cir. 2006) (citing *Microsoft Corp. v. Multi–Tech Sys., Inc.,* 357 F.3d 1340, 1349 (Fed.Cir.2004)).

[3] *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317(Fed. Cir. 2005)).

[4] Especially when, as acknowledged by Defendants at the Markman hearing, it was "really unusual to have this type of after-the-fact expression of [the Examiner's] understanding. It was not prompted by any of the parties here. It really just came out of the blue." (Doc. 115, p. 12).

**of the lignocellulosic fibrous composite** ranges from approximately 5 pounds per cubic foot to approximately 19 pounds per cubic foot.

730 Patent, Claim 1:

Digestate composition, comprising: at least one **solvent**; a lignocellulosic fiber processed by ruminant digestion and anaerobic digestion; and wherein a **density fiber of the digestate composition** ranges from between approximately 0.400 grams per cubic centimeter to approximately 1.40 grams per cubic centimeter.

1. <u>Solvent</u>.  This term appears in all the asserted claims.  After the initial claim constructions briefs were filed, and by the time of the Markman hearing, the parties had worked through several of their initial disputes as to this term to arrive at this remaining issue: whether the solvent had to be functioning as a solvent or only be capable of functioning as a solvent in the claims. (Hrg. Transcript, Doc. 115, p. 21).  Referring to the Revised Chart, Plaintiff asserts that a solvent is "a substance combined with the lignocellulosic fiber, and which dissolves or disperses, *or is capable of dissolving or dispersing*, one or more other substances."  Defendants' proposed construction would eliminate the italicized phrase.  Both proposed definitions reflect the plain and ordinary meaning of the word.  To the extent construction is needed, in the context of the patents-in-suit, the solvents are actually functioning and not just capable of functioning.  As presented in the claims, (1) the solvent is part of "animal bedding, comprising" one or more solvents and lignocellulosic fiber ('652 Patent); (2) "a lignocellulosic fiber composite, comprising" at least one solvent and lignocellulosic fiber ('879 Patent); and (3) "digestate composition, comprising" at least one solvent and lignocellulosic fiber ("730 Patent).  The solvent of these patents is not sitting in a container, ready for action; it has been employed.  Therefore, the Court construes the term "solvent" to mean "a substance combined with the lignocellulosic fiber, and which dissolves or disperses one or more other substances."

2. <u>Density fiber of the animal bedding</u>.  This term appears in Claims 1, 13, and 19 of the '652 Patent.  The parties agree that term "density fiber" has no customary and ordinary meaning.

Defendants point to the Examiner's statement in the September 17, 2020 Office Action that the term is indefinite and has "no known meaning in the art." (Doc. 118-1, p. 7). CCD's proposed construction for this term is: "the density of the fiber processed by both ruminant digestion and anaerobic digestion." Defendants argues that the term should include the qualifier "without solvent."

In Column 5 of 52 at lines 63-65, the specifications states: "After being processed by both ruminant digestion and supplemental anaerobic digestion, the density fiber of the animal bedding preferably ranges …." (Doc. 78-2, p. 7). A claim interpretation "must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). As CCD points out, the specification supports its proposed definition. The Court construes the term as proposed by CCD. Parenthetically adding the words "without solvent" would impermissibly add a limitation to the claim.

3. <u>Dried</u>. This term as it appears in claims 1 and 3 of the '879 Patent does not need construction and is given its plain and ordinary meaning. The Court does not find the "moisture removed beyond ambient conditions" definition put forth by Defendants to be inconsistent with the term's plain and ordinary meaning, but to the extent Defendants' proposed definition places a limitation to the claim, that definition is rejected. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("If we need not rely on a limitation to interpret what the patentee meant by a particular term or phrase in a claim, that limitation is "extraneous" and cannot constrain the claim.").

4. <u>Density of the lignocellulosic fibrous composite</u>. Appearing in Claims 1, 11 and 16 of the '879 Patent, the Court construes this term to mean "the density of the lignocellulosic fiber

composite comprising lignocellulosic fiber processed by both ruminant digestion and anaerobic digestion" as proposed by CCD.  Defendants proposed definition would "include[e] any odor suppressant and/or indicator of animal soiling."   The Court agrees with CCD that this construction would include a limitation found in a dependent claim (Claim 5) on an independent claim (Claims 1, 11 and 16) and impermissibly narrow the scope of the independent claim.

  5. <u>Density fiber of the digestate composition</u>.  This term appears in Claim 1 of the '730 Patent.  For the reasons discussed above regarding "density fiber of the animal bedding," the Court construes this term to mean: "the density of the digestate composition comprising lignocellulosic fiber processed by both ruminant digestion and anaerobic digestion."

CCD's Motion for Sanctions

  Plaintiff CCD has moved for sanctions against all Defendants and their counsel, Joseph David Calhoun, III, pursuant to Fed. R. Civ. P. 11(b).  (Doc. No. 106).  CCD argues that Defendants' third affirmative defense and their fourth counterclaim alleging unenforceability because of CCD's inequitable conduct are baseless and fail to use "objective facts to establish intent of any specific person."  (Doc. 106, p. 2).

  Pursuant to Rule 11, when an attorney signs and presents a pleading to the Court, the attorney certifies that "after an inquiry reasonable under the circumstances," that: (1) the pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and that (4) the denials of factual

contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. "[T]he standard under Rule 11 is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)). Under the safe harbor provision of the Rule, the alleged offending party must receive at least twenty-one days' notice and have an opportunity to correct or withdraw the challenged pleading before the motion is filed with the court. Fed.R.Civ.P. 11(c)(2); *Olson v. Bank of Am., N.A.*, 518 F. App'x 488, 490 (8th Cir. 2013).

Defendants have filed both an Amended Counterclaims and Answer ("ACA," Doc. No. 90) and a Second Amended Counterclaims and Answer ("SACA," Doc. No. 104). In response to the motion, Defendant argue that Plaintiffs failed to satisfy Rule 11's safe-harbor provision with respect to the SACA, and the motion should be denied on this point.

Following their receipt of CCD's draft motion for Rule 11 sanctions related to their ACA on February 10, 2020, Defendants filed a motion for leave to again amend their challenged answer and counterclaims—specifically their third affirmative defense and fourth counterclaim relating to CCD's inequitable conduct—to "among other things, clarify and augment the examples of inequitable conduct committed by Plaintiff in the prosecution of the patents" at issue. (Doc. No. 97, ¶ 3). CCD did not respond to the motion, which was granted. Among other changes, the SACA added allegations that CCD intentionally hid the Dvorak Patent among the 80 other prior art references and failed to re-disclose it in prosecution of the '730 patent. (Doc. No. 104, ¶¶ 32-33, 74, 79).

The Court agrees that CCD failed to follow the safe-harbor provision of Rule 11 with respect to allegations in the SACA. CCD's motion makes no mention of providing notice to

Defendants that it considered allegations in the SACA to still be in violation of Rule 11. CCD states that it sent Mr. Calhoun a draft motion for sanctions as required by Rule 11 that was "substantially similar to this motion" but rather than remove the "offending material," Defendants responded by filing the SACA on March 25, 2020. The motion also assumes that inequitable conduct allegations are only directed at the '730 patent (Doc. No. 106, fn. 1), which may have been true for the ACA but is clearly not true for the SACA.[5] Absent a motion setting forth the "specific conduct that allegedly violates Rule 11(b)," the Court cannot make a determination that a violation occurred. Fed. R. Civ. P. 11(c)(2).[6]

The Court advises, however, that the conduct complained of does not appear to objectively manifest intentional or reckless disregard of Mr. Calhoun's duties to the Court. CCD challenges the following allegations made by Defendants and their counsel as sanctionable.

    1. <u>Failing to disclose the Dvorak Patent</u>. As of the filing of the SACA, the parties disagree on whether the Dvorak Patent should have been redisclosed in prosecution of the '730 patent (the only patent CCD's motion addresses). CCD relies on section 609.02 of the Manual for Patent Examining Procedure ("MPEP") as support for its argument that the law did not require it to re-disclose the Dvorak Patent when it had been disclosed previously in the parent patent application. A quick legal search indicates that CCD's argument is supported by

---

[5] SACA at pp. 13-16, 36-37 contains allegations of inequitable conduct concerning the '652 Patent and the '879 Patent as well.

[6] Defendants say they removed the allegations in the SACA that CCD failed to disclose the Dvorak Patent—but the allegations remain as part of the third affirmative defense. (SACA p. 13, ¶ 4(a); p. 14, ¶ 6, p. 24 ¶ 55). Defendants did remove the failure to disclose claims in the inequitable conduct counterclaim, replacing it with allegations of "intentionally hiding" and failing to re-disclose the Dvorak Patent. (SACA, p. 20, ¶ 33; p. 21, ¶ 36, p. 22, ¶¶ 40, 44, 48, 52).

authority. [7]  In response, Defendants argue that section 2001.06(c) imposed a duty on CCD to re-disclose the Dvorak Patent during the prosecution of the '730 Patent primarily because of the litigation between the parties in the present lawsuit and Case No. 3:15-cv-00644 in the Southern District of Illinois, which arose after the prosecution of the parent patent.  The Court has considered this argument and the authority cited by Defendants (Doc. No. 107, pp. 7-10), and, while not speaking to the strength of Defendants' argument, the Court does not find the allegations complained of to be sanctionable.

  2. <u>Failure to disclose the Zauche Patent</u>.  CCD's motion also challenges the allegations that it had knowledge of "the number of the prior art Zauche Patent … that would invalidate the '879 Patent" and failed to disclose it to the Patent Office. [8]  CCD argues that the Zauche Patent was "clearly cumulative and therefore immaterial" and therefore it had no duty to submit it pursuant to 37 C.F.R. 1.56.  A Rule 11 motion is not the proper vehicle for challenging the strength of allegations regarding whether prior art is material or cumulative.  The motion for sanctions regarding the Zauche Patent is denied.

  3. <u>Failure to disclose material litigation information and prior art</u>."  CCD takes issue with Defendants' allegations throughout the SACA that it failed to disclose material litigation information regarding the '730 Patent application when it "was preparing to file (or at least considering filing) the Second Amended Complaint" to bring in claims of infringement of the '730 Patent.  CCD argues that these allegations are "self-serving conjecture, wholly unsupported

---

[7] *eBay Inc. v. IDT Corp.*, No. 08-CV-4015, 2009 WL 2706395 (W.D. Ark. Aug. 24, 2009) (quoting *ADT Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed.Cir.1998), holding that "it can not be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application.").

[8] There is no reference to allegations in the SACA in this section of the motion for sanctions, but the allegations regarding the Zauche Patent appear unchanged from the ACA to the SACA.

by facts, and completely fail to meet the high burden of pleading inequitable conduct." (Doc. 106, p. 7). These arguments would have been appropriate in a motion to dismiss for failure to state a claim. They do not support a claim that Mr. Calhoun either intentionally or recklessly disregarded his duties to the Court.

CCD also argues that Defendants' allegations that it failed to disclose certain prior art sales are "legally meritless," pointing to section 609.02 of the MPEP. Again, the parties are arguing about the duty to re-disclose which the Court has addressed above. For the reasons stated above, CCD's motion for sanctions is denied.

Defendants' Motion for Severance and for Stay of Action

In this motion (Doc. No. 108-1), joined by all Defendants, Walmart asks the Court to sever the claim against it pursuant to Rule 21 of the Federal Rules of Civil Procedure and to stay the causes of action against it until the issues of patent invalidity, enforceability, and non-infringement against Magic Dirt have been resolved. Walmart asserts the "customer exception" rule and states that it "will agree to be bound by any issues of law and fact determined by the Court with respect to patent infringement in this action." (Doc. 108-1). Plaintiff disagrees that the customer exception rule applies and argues that the motion to stay the claim against Walmart is premature and that it would require additional time and expense contrary to Walmart's assertions.

Under the "customer suit" exception, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacture." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception arises from "the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... it is a simple fact of life that a manufacturer must protect its customers, either as

a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Id.* at 1464 (quoting *Codex Corp. v. Milgo Electronics Corp.,* 553 F.2d 735, 194 USPQ 49 (1st Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977)). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

CCD is correct that the traditional customer-suit exception does not apply in this situation, where there is only one case at issue. *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) ("[W]e are aware of [no appellate court case] that sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier.") However, as the Federal Circuit recognizes, "[t]he policies expressed in the duplicative-case context are certainly relevant in a district court's decision how to proceed within the context of a single case." *Id.* Furthermore, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).

In its Second Amended Complaint, Plaintiff makes six infringement claims against Walmart (representing the three patents at issue and the two Walmart defendants). (Doc. No. 62, ¶¶ 102-131). Each claim asserts that Walmart "infringed and/or continues to infringe" the patents at issue by offering to sell and/or selling infringing products. CCD seeks both injunctive relief and compensatory damages against Walmart.

Walmart has agreed to be bound by "any issues of law and fact determined by this Court with respect to patent infringement in this action." (Doc. No. 108). Walmart is being indemnified by Magic Dirt Horticultural Products LLC. (Doc. No. 108-1). A resolution of the patent infringement claims against the Magic Dirt defendants (including the defenses of invalidity and unenforceability) will resolve these claims as to Walmart. Furthermore, Walmart has asserted that it no longer buys the Magic Dirt product as of March 27, 2020. (Doc. 108, ¶ 4), which, unless this changes, would alleviate prejudice to CCD insofar as it is seeking injunctive relief.

CCD argues that granting the motion "would increase judicial and resource expenditure" without saying how. (Doc. 111, p. 6). Its citation to the order of the Illinois District Court, before the case was transferred to this Court, in which that court declined to sever the claims of the Cenergy and Walmart defendants is misplaced. The Illinois court found that granting the motion to sever at that time would result in a "second, immaterially different action proceeding in another district"—that does not apply to the circumstances currently before the Court. CCD also argues that the motion to stay is premature at this point since discovery has barely begun. However, the record before the Court is sufficient for the Court to make a determination that staying the action as to Walmart, including Walmart's pursuit of its counterclaims, will best serve the interests of "economy of time and effort for itself, for counsel, and for litigants." The Court finds that a bifurcation under Rule 42 of the Federal Rules of Civil Procedure, however, is a better procedural vehicle to manage these claims than a severance under Rule 21 that would create two separate actions.[9]

---

[9] Under Rule 42(b), the Court has the discretion to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" in the interest of "convenience, to avoid prejudice, or to expedite and economize." This rule allows courts to "separate a single

For these reasons, the claims against Walmart are bifurcated from the claims against the remaining defendants and any remaining claims against it will be tried following a determination of the patent infringement claims against Cenergy and the Magic Dirt Defendants.

Conclusion

For the reasons stated above, Plaintiff's motion to exclude certain evidence from consideration in claim construction (Doc. No. 92) is GRANTED; Plaintiff's motion for sanctions (Doc. No. 106) is DENIED and Defendants' motion for severance and stay (Doc. No. 108-1) is GRANTED as stated above; and the disputed terms are construed as follows:

| Patent Term | Construction |
| --- | --- |
| "solvent" | a substance combined with the lignocellulosic fiber, and which dissolves or disperses one or more other substances |
| "density fiber of the animal bedding" | the density of the fiber processed by both ruminant digestion and anaerobic digestion |
| "dried" | plain and ordinary meaning |
| "density of the lignocellulosic fibrous composite" | the density of the lignocellulosic fiber composite comprising lignocellulosic fiber processed by both ruminant digestion and anaerobic digestion |
| "density fiber of the digestate composition" | the density of the digestate composition comprising lignocellulosic fiber processed by both ruminant digestion and anaerobic digestion |

---

action into separate components without dividing them into separate cases." *Strandlund v. Hawley*, 532 F.3d 741, 744, fn. 1 (8th Cir. 2008).

IT IS SO ORDERED this 27th day of September, 2021.

_____
James M. Moody
United States District Judge